The next case today is Nestor Aramiz-Perez-Trujillo v. Robert M. Wilkinson, appeal number 11-1481 and Nestor Aramiz-Perez-Trujillo v. Robert M. Wilkinson, appeal number 17-1586. Attorney Romanofsky, please introduce yourself on the record and proceed with your argument. Good morning. May it please the court, my name is Greg Romanofsky and I represent Mr. Nestor Perez-Trujillo. I will talk about my client's attempt to get permanent resident status through his adjustment of status application, that's docket number 17-1586. And out of my eight minutes, I would like to reserve two minutes for a rebuttal if I may. Yes. Thank you. Your honors, the facts of this case are not in dispute as my client was found credible by both immigration judges who issued the opinions in the two immigration court cases against him. The record shows that Nestor entered this country as a child fleeing terrible gang violence in El Salvador. The record shows that he did suffer persecution in El Salvador. The record also shows that a Massachusetts state court found that Nestor has suffered abuse, abandonment, or neglect and that it's in his best interest not to be returned to El Salvador. In fact, no one disputes the fact that Nestor will likely be seriously harmed and possibly killed if he is deported to El Salvador. The only question here is whether the law allows the U.S. government to still send him there despite his undisputed eligibility for relief from removal. Nestor's eligibility is based on his status as a special immigrant juvenile awarded to him by the Department of Homeland Security almost 10 years ago. Once your SIJ immigrant visa petition is granted, you perfect your legal status in the United States by filing an application for adjustment of status with the same Department of Homeland Security or, if you're already in removal proceedings, with an immigration judge. Adjustment of status is an opportunity to secure permanent residence status without leaving the United States. Generally, if you have an approved immigrant petition and you're not eligible for adjustment of status for whatever reason, you process your immigrant visa at a U.S. consulate overseas. This is called consulate processing. Things are different in the SIJ context, special immigrant juvenile context, because of the unique nature of SIJ status. Because you are required to be present in the United States to obtain SIJ status, the Amici in this case argued that SIJ simply cannot consulate process because they lose their status when they leave the United States. It does make sense. Congress intended for these children to adjust their status in the United States and not go back to their home country where they have been neglected, abused, or abandoned. This is why it allowed these children to apply for adjustment of status even if they entered the country illegally, which typically makes you categorically ineligible for adjustment of status. The government attempts to characterize Nestor's arguments as, quote, objection to the manner in which the agency evaluated and weighed the evidence in the record. This is not what we're arguing. We're asking this court to review two important legal errors. The BIA's failure to apply the and the BIA's application of a wrong legal standard when it was reviewing the immigration judge's factual findings. The correct legal standard for discretionary determinations in the adjustment of status context was articulated in the board's case, the matter of ARRAI. This is what ARRAI says. Favorable factors such as family ties, hardship, length of residence in the United States, etc. will be considered as countervailing factors meriting favorable exercise of administrative discretion. Not may be considered, but will be considered. Here, the BIA in its decision makes a reference to the ARRAI standard, but doesn't actually use the standard. It was so preoccupied with Nestor's criminal history that it completely missed to take into account several important considerations that they were required to take into account based on ARRAI. Isn't your argument premised on the BIA's failure to specifically spell out its reasoning? By mentioning areas, the court is at least signaling that it is aware of the necessary considerations. It seems that in the decision, they highlighted what it found to be most important. The BIA in its two-page decision did restate some of the findings by the immigration judge. The immigration judge did a very detailed 12-page analysis of all the positive factors versus the negative factors. The BIA basically restated some of the positive factors and then said the criminal history is so terrible that the positive factors do not outweigh the negatives. It did not analyze one of the most important elements that the ARRAI requires them to analyze, hardship. That's a version, I think, of an answer to Judge Thompson's question when you say it did not analyze one of the factors. The line between a challenge to the weighing of factors which can't succeed and the challenge on legal grounds to not applying the framework which can succeed is pretty easy to see. I think what's a little more difficult for me to see is what line you're asking us to draw. You can see that if they're just challenging the weight given to a factor, that's not good enough. If you are just challenging the mix of factors, that's not good enough. You can see that they acknowledge the ARRAI factors. Then the question is, are you not conceding that? If you are conceding that, is the idea that there was such a salient factor identified and put on the table that it was legal error not to engage with it and that being the hardship that would come from going back to the country? If I may, Your Honor, hardship was not even identified. The word hardship does not appear once in the entire decision. I guess there's two possibilities. One is we could conclude that it misapprehended that hardship is a possible factor under ARRAI. That would obviously be legal error. It's a little tough to say that when they cite ARRAI and ARRAI is not that long and it identifies hardship as a factor. I'm inclined to think that a more generous reading of the BIA's decisions is it knows what ARRAI says when it cites to it. So an alternative version of the argument would be, even though it identified the ARRAI factors, in this case, it did not even engage with one of them, notwithstanding the substantial evidence put forward of that factor and that that's somehow legal error. I think some of our precedents suggest in that direction, but I don't know whether that's your argument. Actually, I would argue both, Your Honor. I would argue that the mentioning of some of the positive equities does not equal analyzing the hardship. First of all, we would say that hardship was not even considered. There's no evidence that hardship was considered. Number two, this is such an important factor. This is the big elephant in the room that should have been considered and should have been analyzed. The BIA should have done a better job engaging in this analysis, as you said, especially since the immigration judge ordered relief. The immigration judge analyzed everything and said, I think weighing all the pros and cons, I think that the criminal conduct is careful. Could you just, in a short way, how would you describe what that factor is and what the failure was? The word hardship seems to be a little too general to help me understand what your argument is. Absolutely, Your Honor. There are several very big considerations that were missed as far as the hardship is concerned. First of all, the BIA found that Nestor had suffered persecution in El Salvador. How can you analyze hardship and miss that fact and not talk about the fact that he specifically would be, as the country conditions expert said, particularly vulnerable to being harmed or killed if he goes back because he reported on some MS-13 members to the police? How can you not even engage in that argument? Another important consideration. How can you analyze hardship and miss the fact that you are deporting a special immigrant juvenile? How can you ignore the state court's ruling that petitioner has been abandoned, abused, or neglected? How can you ignore the court's ruling that it's not in petitioner's interest to be returned in El Salvador? How can you not consider the fact that the Department of Homeland Security, your sister agency, has already awarded, in the exercise of discretion, the SIJ status to Nestor based on that court's finding? There was a case on January 28th of this year where this court held that if the BIA ignores the finding, it's Granada's Benitez, ignored the finding of a sister agency, that is an important legal error in a discretionary analysis. There was a case, an unpublished BIA decision attached to the amicus brief, your honor, where the board did exactly what it was supposed to do in this case. The board said the immigration judge also correctly weighed the trauma the respondent experienced in Honduras and the fact that USCIS had determined that it was not in his best interest to return to that country. The board didn't do that here. And lastly, if I may, there's another important consideration regarding hardship. The BIA, in conducting the discretionary analysis, should have paid attention to the fact that, to the specific nature of the discretionary determination. All we're doing here, all the BIA was supposed to do here, is decide whether Nestor is eligible to take advantage of his special immigrant juvenile status and get permanent residence without leaving the United States. That's all what the discretionary analysis was about. Does he need to go back or can he get the status here? Mr. Romanofsky, we're quite a bit over time, but I would like to ask you a question about the second point that you outlined at the beginning with respect to your assertion that the BIA applied the wrong legal standard when it rejected certain findings of the immigration judge. And specifically, if you could explain to me your argument with respect to its apparent rejection of the finding that he had rehabilitated himself since his last serious offense. Could you talk about that for a minute? Yes, your honor. Thank you very much for the opportunity to talk about my second point. The judge did find complete rehabilitation. What the BIA said in its decision, they said, although the immigration judge found the respondent had begun to show rehabilitation, at the time of the hearing, the respondent had only been recently released from prison. So there are two arguments, possible arguments here. First of all, that the BIA discredited the immigration judge's finding of rehabilitation. And even though the judge said so, we don't think so. You can argue that the BIA didn't mean that and that the BIA actually meant to attribute less weight to the finding of rehabilitation. Okay, even if you give them the benefit of the doubt, the judge, the immigration judge, never found that the respondent had begun to show rehabilitation. The IJ did not find that the petitioner had begun to repair the relationship with his mother and sisters. The immigration judge did not find that petitioner's participation had just begun participating or had begun getting on the right track. The judge found complete rehabilitation. And because the BIA found differently, they were supposed to use the clear error standard, which they did not do. This is why we think it's a legal error. So does the term rehabilitation itself constitute a fact or should we be focusing on the raw facts, only the raw facts leading to that conclusion? And I guess my question is, is this a clear error standard or is it an application of some rule or principle to the facts where it's more of a sliding scale? I take it you would say the finding of rehabilitation is clearly a factual determination and the clear error standard applies. Is that right? This is absolutely correct, your honor. This is a factual finding and the BIA overturned that factual finding without using the proper standard. Other questions from the court? All right, you've reserved some time. Thank you. We'll hear from Mr. Kim. Thank you, your honor. Attorney Romanofsky, thank you. And then attorney Kim, please just introduce yourself on the record. Thank you. Good morning, your honors. May it please the court. My name is Sangyeob Kim for petitioner. If I may, I'd like to reserve one minute for rebuttal. Yes. Thank you, your honor. In this petition, there are two additional claims, which are convention against torture and witness-based PSG claim for asylum and withholding. And let me start with CAT. The BIA made a finding that no one at the government would turn a blind eye to potential harm, but the record's abundant in support of the CAT eligibility. Petitioner credibly testified about how police had abandoned him. He reported the gang activities to the police three times. First time, the police accused him as a suspected gang member. Second time, police ignored him. Third time, while not trusting him, police made one arrest, but not others. Even that apprehended member was subsequently released. Now, his credible testimony is consistent with objective evidence. The security forces in his country deliberately abandoned their post. They disappear when gangs are present. The gangs are working with impunity. The authority does not investigate or prosecute when the victims are either marginalized community members or suspected gang members. Now, despite this abundant evidence, the BIA's reasoning is completely silent on any of the points that I'm making. So, that's a legal error because under the regulation, the agency is obligated to consider all relevant evidence in assessing likelihood of torture. So, with that reason alone, this court can reverse the BIA decision. There's a waiver issue on CAT? Your Honor, that's what the government argues. So, government's argument is on two points. Number one, this court cannot entertain the claim and even if this court does, this court should not entertain the claim. So, government's argument about the exhaustion issue, as long as the BIA made a finding and entertained the claim, that should resolve the exhaustion issue. Now, and there is a good cause why this claim was not raised in his opening brief in 2011. Now, at that time, the law in this circuit of the exhaustion was not clear when the issue was addressed by the BIA, but not raised by the non-citizen before the agency. That question was settled in 2013 for the first time. So, nine years after the submission of the opening brief in 2020 and from 2019, this court invited the party to submit. I think I'm a little puzzled, but why does it help you? And maybe we still would have discretion to excuse the waiver, but why does it help you that the law wasn't clear in 2011? Usually, if the law is open enough to countenance and argument and someone doesn't raise it in their brief, we treat it as not raised. We don't say, well, we understand why you didn't raise it since you wouldn't automatically win on it. The whole idea is that if it's an open argument, you can do it. You're not making the argument that our precedent precluded the argument. I don't really understand why that explains the waiver. So, that would be one factor for this court to consider, whether this court should exercise its discretion to entertain the claim. Now, what's more important is in 2019, the petitioner filed a motion to clarify the scope of the supplemented brief, and this court invited the parties to consider and write a brief with respect to all remaining claims. There is no limitation to the scope of the supplemented brief, either. So, this court can exercise its discretion to entertain the CAT claim, as well as the witness-based PSG claim. Now, let me move on to the PSG claim, unless your Honors have any questions about the CAT issue. The BIA, similar to the CAT claim, did not analyze any of the evidence. Rather, the BIA really relied on matters of CA and this court's SCAT and Beauty v. Holder to find the witness-based PSG claim lacks social visibility and is indeterminate. Now, just to the extent the matter of CA is relevant, BIA, in 2014, clarified that there is no requirement for ocular visibility in a matter of MEVG. That's page 238 to 240. Now, obviously, at that time, in 2011, the ocular visibility appeared to be a requirement. Now, but in any event, there are laws to protect witnesses in this country, and that's the record in the evidence. That's 1790, and that's where the Sabahdran president emphasized the importance of protecting witnesses. And as a response, in page 1729, in 2006, the legislature enacted the special law to protect victims and witnesses to at least for the purpose of social distinction, at that time, social visibility, it is sufficient to meet that element. Now, for the particularity, BIA just made a finding that it is indeterminate without any explanation. But witnesses… Yes, Your Honor. Just one. I don't want to cut you off on this point, but I thought there was also another group, another PSG, besides the witness PSG that was before us in this petition. Yes, Your Honor. That is the PSG, the social group that petitioned race before the agency, young Sabahdran person who registered gang membership and then fled the country. And I don't want to cut you off from finishing the other argument on the PSG, but if you could address why that's not an independent, legitimate PSG that the BIA's decision doesn't adequately address. Your Honor, while we are not considering that social group is not cognizable, but I'm still mindful that many… You're not making any argument to us that it is cognizable? No, you know, other than the points that the petitioner made in his opening brief in 2011. Well, are you still… are those still before us? Yes, Your Honor. You're just not focusing on it. I'm not focusing on… that is correct, Your Honor. I'm not focusing other than all the arguments that were made in opening brief. And here's why. So, the petitioner focused on the Sixth Circuit and Seventh Circuit case law to overcome the discourse and the BIA's case law on that part. But in 2013, this court specifically rejected the Sixth Circuit and Seventh Circuit's case law. So, I am mindful that it is very difficult for a DS social group to be cognizable by this court. So, I'm not really focusing on that PSG claim while not considering that it's not cognizable. If I may, for now, government's argument does not really respond to any of the points that I'm making, whether government's argument really hinges on the nexus issue. But still, government's argument is silent on the fact that BIA failed to apply the charge. Then just going back, since you're going to focus on that PSG, just backing up, why is the particularity finding by the BIA not sustainable? Who has the burden on showing it's a particular group? It is the applicant who has the burden to show that. So, I guess I don't fully understand. If it says it's not particular, then you say they don't have anything to back that up. But what do you have to show that it is particular? No, what I meant was the BIA did not even analyze, did not even provide any explanation why this social group has not met this particularity element. But for the particular element to be cognizable. Was that argued before the BIA? I'm sorry, go ahead. No, it was not argued. The petition did not raise any of their claim. But as long as the BIA addressed the claim, this court can entertain the because the exhaustion is met. If you don't put anything in to show it's particular, the BIA then says it's not particular, what are you going to stand on to show you can meet your burden of particularity to challenge the BIA's ruling? I don't really get that. So, once the BIA makes a decision and provides a reasoning for its holding, then this court has the ability to review the BIA's holding. But since you haven't argued it to the BIA, you'll have nothing to show it's wrong. That's what I don't quite understand. Even if the petition did not raise a claim, the BIA is simply wrong because witnesses are witnesses. There's just no subjectivity aspect of that particular social group and no one would dispute about the definition of that and no one would dispute who belongs to that group or not. It just has a very simple and clear benchmark. Even if that argument was not raised before the BIA, the BIA is just clearly wrong. It's not at the borderline. What's the phrase? Witnesses of what? Witnesses who openly went to the police to report the gang activities. You don't think there's a potential question about the particularity of gang activity? No, Your Honor. In the context of the Savage Law Society, based on the record. Now, again, back to the- All right. Thank you. Thank you, Your Honor. We'll hear from Mr. Robbins. Can everyone hear me? Yes. Okay. May it please the court. Jonathan Robbins here on behalf of the acting attorney general. Good morning to all of you. This case has been around for a while. The underlying petition for review from 2011 and 2012 was actually fully briefed and went all the way to oral argument, but before a decision was issued in that case, several agency memorandum came down regarding the treatment of children who come to the United States and the government determined that it would be appropriate to remand the case in an exercise of prosecutorial discretion to allow petitioner to see whether administrative closure of proceedings would be appropriate. The court's remand order as well indicated that petitioner would have the opportunity to apply for or to see whether adjustment of status would be appropriate. Unfortunately, since that time, the petitioner engaged in some significant criminal activity. Unfortunately, some of that activity was sometimes violent. And so when he found himself before the board again in 2017, the board, as is evident from their decision, was not predisposed to a positive exercise of discretion. So because the opening argument sort of presented it in this order, I'll address the most recent petition for review from 2017 first and then move to the prior petition. So with respect to the 2017 petition for review, that petition for review should be dismissed for lack of jurisdiction. The jurisdictional bar at 1252 A2B precludes jurisdiction over discretionary denials of adjustment of over adjustment of status applications. And this board decision is a quintessential discretionary denial of that form of relief. The board weighed the favorable and negative factors in the case and did exactly what it was supposed to do. It determined how those factors should be weighed and which way the balance tipped. Now certainly we understand why petitioner is not happy with the result of that discretionary finding. I thought his argument is, maybe you just want to address why it's wrong. He's not presenting his argument as I don't like the weighing. He's saying that there was a factor highly developed in the record of hardship, which had to do with the future persecution the person would suffer and the fact that they would been given the special status and that none of that was even addressed, not that it was not weighed. That is his argument, your honor, but very often it's actually a bit of a stock argument in these cases. Because the law is so clear that there's no jurisdiction to review this type of finding, what often happens is that... I know I'm pretty aware of how these cases go, but sometimes the failure to consider relevant evidence of a factor is treated as legal error and not as a failure weighing. You know that. Some of our cases say that. Obviously the question is how do you decide whether cases in category A or category B. Unless you're saying that if the agency doesn't even consider evidence that bears on a factor, that's not legal error, which I don't understand you to be saying, then why don't you address... It would be helpful to me if you could address in this case why the petitioner is wrong to say that given the nature of the evidence that was put forward of on this, the face of the BIA's opinion, it's not evident it considered that evidence rather than simply it didn't weigh it in the way that the petitioner wanted. Well, because the text of the board's decision reveals that it actually was considering those factors. When we're talking about hardship... No, no, you shifted. Oh, I'm sorry. I thought you said that he was arguing that he didn't, that they didn't consider the hardship. No. What he's saying is that there was substantial evidence put forward of hardship that had to do with persecution and his special status as a juvenile and what would happen to him if he was returned and that none of that evidence was considered, not that it was not weighed, it was not considered in the hardship because they mentioned only the harm that would be done due to criminal activity in El Salvador with no indication they were grappling with his unique situation. That's not a claim of a failure to weigh things, that's a failure to consider at all. So if you could just address that aspect of his argument, that'd be helpful to me. And what I'm saying is the board did consider those factors. If you look at the board's decision and the text of the board's decision itself, so for example, let's talk about his special immigrant juvenile status. They specifically acknowledge in the text of the decision in the third paragraph that the immigration judge had granted his application for special immigrant juvenile status. So there's no indication here that the board wasn't aware of the fact. How about the persecution point, the risk of persecution to him? Well, what the immigration judge talked about in that regard was with respect to the fact that it would be particularly dangerous for him given the level of crime and violence in that country. Now, I'll agree with you that the board didn't write an exegesis on the hardship in that regard, but they are acknowledging his point that it's going to be dangerous for him to return to that saying the level of crime and violence is the same as consideration of the fact that he was at particular risk of persecution. Those are not identical. Well, he said the board used the specific terminology particularly dangerous. To me, that's an indication that they were talking about the specific danger to him and not just some sort of general dangerousness. And I would also point out that the way that petitioner raised this was sort of suggesting a broader notion that they aren't considering the specific hardship to him. But when we're talking about hardship, a lot of the factors that petitioner was raising are intertwined with hardship. So, for example, when they talk about his family ties to the country, yes, they may not explicitly be using the word hardship, but the fact that you're going to be removed and you have ties to the country is implicit hardship. So I think what the petitioner is attempting to do is mischaracterize the board's decision because its language maybe wasn't as clear. There's a difference between your family's going to miss you and I'm going to be killed when I go home. Well, again, I would point to the board's decision, which specifically talks that it will be particularly dangerous for him to return there. The board talked about a number of factors. And I would also point out that the board's factors... It's the second part of that that just worries me that they didn't grapple with this point because it says particularly dangerous to him. Then it says given the level of crime and violence there, the worry is just that they're not facing up to the issue and didn't consider the fact that it's not just he's worried about the general level of violence there, but that he's worried about the fact that he is a marked person. Well, that certainly is claimed, but that sort of relates to the denial of relief in the other petition. No, it doesn't. It relates exactly to this because if they didn't consider that, then that would be legal error. So I wanted to know how you can say they considered. Well, again, I'll agree with you that the board's decision is a bit sparse, but when they talk about particular dangerousness to the petitioner, to me, what that says is that they're considering that he could potentially face harm in the home country. And of course, with respect to the individualized harm that he has to show, that was addressed in the prior petition for review when they specifically looked at the individualized harm that he would face for I think I would also point out that if you look at what the board's decision does in this case, the board's decision really mirrors the pleadings that he filed with the board arguing that the immigration judge's decision should be upheld. When you look at the favorable factors that are listed here, these are the favorable factors that the petitioner focused on in his pleadings to the board. So what is important in these cases, yes, it's an error of law if the board fails to consider something. But what is important here is that the board fully grasps what is being claimed. And when petitioner specifically sets out what he wants to be claimed and the board follows those pleadings to a T, I don't think that's error by the board. I mean, there's often an argument made, I'm sorry, your honor, do you have a question? Well, I just want to make sure you do get to the cat claim, but I don't want to cut you off. Okay, well, with respect, I'll certainly jump to that if your honor wants me to do that. With respect to the cat claim. Just before you leave the legal errors on 17-1586, the IJ's finding of rehabilitation that the BIA appears to have rejected, can you explain why that is okay under the clearly erroneous standard? Yes, the board was not making a new finding of fact there. They acknowledged what the immigration judge found that he'd begun to show rehabilitation, but that he had only been recently... So the other side says that the IJ found rehabilitation. They describe it as complete rehabilitation. Is that the distinction that we're... I mean, I don't see anywhere in the decision where he specifically talked about a bit finally between what the board is doing here. The problem that the board had is that the rehabilitation was recent. That is not a different finding than what the IJ found. In fact, the IJ expressly noted that the rehabilitation was very close proximity to having been released from prison. So what the board is doing here is affording different weight to the meaning of the small amount of time of rehabilitation. I don't think that they're saying that there wasn't rehabilitation. That to me, I think is maybe parsing the board's decision to a point where... But your opponent argues that it was a finding of fact that he was rehabilitated. And the board did not overturn that finding of fact. It acknowledged that the immigration judge had found that he'd begun to rehabilitate. I mean, I don't think that this decision turned on the notion that rehabilitation wasn't complete. I think it turned on the fact that... The problem was that you'd begun but hadn't completed it. Because they move on right next to say that he'd only recently been released from prison. And so what they're really focusing on there is the proximity of time. That means they rejected the finding that he was rehabilitated. No, I don't think... Nowhere in the board's decision does it say he's not rehabilitated. What they say is that that's only a very recent phenomenon from when he's being released from the prison. And so they're not overturning the immigration judge's finding of rehabilitation. There's nothing in the board's decision that suggests that. Except for they said he had begun. Yeah, but we're grappling with this, whether they in fact did. Well, look, I mean, maybe the board is not... I mean, when they say he's begun to rehabilitate, I don't think that they're saying that that's not a complete rehabilitation. I think they're just trying to accurately restate what the immigration judge said. I mean, I think it's I don't think the board foresaw that that was going to be some sort of finding that they're overturning the factual findings of the immigration judge. I think that's a bit of a stretch from what the board's decision is doing here. And I want to emphasize what the board did here is entirely appropriate. I mean, it is absolutely... The board is absolutely entitled to look at this case and say, we think the significant criminal history in this case outweighs the favorable factors here. You know that's not what we're asking you about. We're asking about particular legal errors. And the question is, if in the course of doing that assessment, they made legal errors, then there are legal errors. I would also point, Your Honor, to the fact that this was a three-member panel of the board, not the normal single member. They were giving extra attention to this case. I mean, the board is entitled to a presumption of regularity that they're considering the case. I mean, they had to have read the immigration judge's decision that talks about the SIJ status, that talks about all these different issues. So it's not as though the board was somehow unaware of these issues. I don't think this is a failure to consider. I think this is maybe a failure to state specific reasons. But the law has never required that the board specifically state every single point that's being made. What is appropriate is that they consider the entirety of the case and demonstrate that they fully grasp what the claim is. And I think this decision is sufficient to show that that's what they did. I see I'm running low on time. Your Honor asked about the specific CAT claim. First of all, that issue should be deemed waived. As Your Honor alluded to in the opening presentation, Petitioner is not arguing that he was precluded from making this argument. He's arguing that a case came out... If we chose to excuse the waiver, what's the prejudice to the government of us doing so? Well, I mean, it's very late in the game. I mean, we're talking many years. This case went all the argument and they didn't raise CAT. I mean, it allows for 11th hour changes of tax simply because somebody switched counsel. It's the government's position that it would be completely inappropriate to do that in a situation like this. He chose to put his eggs in the asylum and withholding basket. If we did excuse the waiver with respect to the CAT claim, how do you explain why the BIA's analysis of it should be sustained? And I want to know why you feel prejudiced. Well, in our briefing, we made a waiver argument and we only sparsely pointed out that this claim also failed on the merits. Why didn't you make the full argument? We did in a footnote, but we primarily focused on the waiver argument because Petitioner hadn't raised it at any time prior. So, in other words, either the government is in a situation where we have to argue the alternative and then we're not prejudiced or we are prejudiced by arguing waiver. The government does that all the time. Well, that's true. That just means you're not prejudiced because you could make the argument. Well, that may be true, but then no issue would ever be waived. Sometimes you're unable to make an argument because of the passage of time. In this instance, you're not identifying any reason why you couldn't have made an argument here fully or why even if you could, it would be prejudicial for us to rule on that ground, other than I guess you're just saying it's late. Well, I would point out that we cited a Supreme Court law that said that the court should discourage this type of 11th hour change of tack. So, I take your Honor's point on prejudice, but there are a lot of issues that are waived where the other side could have made the other argument. And we, in fact, did in a footnote point out that this record did not demonstrate that the government would acquiesce to torture. I mean, the evidence actually demonstrably shows the opposite in this case. When the police thought that Petitioner was a gang member, they arrested him. That's indicative of the police force not acquiescing to gang activities. So, the notion that they would acquiesce to the torture of somebody is not borne out by this record. It's not borne out by the local officials that were specifically individualized to the Petitioner in this case. So, on the merits, we would suggest that the evidence certainly does not compel a conclusion that the police would acquiesce to torture. But again, I think this is a very strong case for waiver, prejudice issue aside. I mean, this case went to – it wasn't just briefed. It was all the way at oral argument, and they did not raise this case. The only reason it's even live is because the government agreed to explore prosecutorial discretion in the case. So, for the court to revive it now, 10 years after the fact, we think the government's too late, and we think the court should agree with that. I see I'm low on time. Did your honors want me to briefly discuss the social group issue? I think we're good. Thank you, counsel. Okay. Thank you very much for your time, your honors. Mr. Romanofsky, Mr. Robbins, if you could mute your video and audio. Thank you. Thank you, your honor. The government says that when the BIA issued a decision in 2017, it was not predisposed to a favorable exercise of discretion. I don't think that's the right way of phrasing it. I think when the BIA issued its decision, it was actually predisposed to a non-favorable exercise of discretion. I would like to also point out that the BIA was thoroughly confused about what... Yeah, but why do you say that? Why do I say that they were predisposed to an unfavorable exercise of discretion? Yes. Because the entire decision, the two-page decision, lists the criminal history, restates some of the positive points that the immigration judge noted, and then the actual analysis of the actual discretionary determination is limited to two sentences. Given the violent nature of the respondents' activities in this country almost since arrival, we conclude that the favorable factors of record do not outweigh the unfavorable. It pretty much says there's nothing you can put on the table that will make us exercise our discretion favorably. I would also like to point out when the government says that the BIA did consider the petitioner's SIJ status, they point out to this language on page one of the BIA decision, which says, the immigration judge granted the respondent's application for special immigrant status under section 245H of the act. This is actually very telling, and I don't think it's just a typo. Obviously, the judge did not grant the special immigrant status. The Department of Homeland Security had done it many years before that, but I think what the BIA was doing, they were in essence re-adjudicating the DHS finding that this person is eligible for the special immigrant status. I think that the board was actually confused on what it was that it was reviewing. They did think that the SIJ status had been granted improperly, and they decided to change that result. Finally, I understand that this court does not and will not engage in re-weighing of the evidence before the agency. I get that. I just want to highlight the difference between the existing case law in this circuit denying review of discretionary determinations and this case, the case of Nestor. Most cases in which this court denied review involved very thorough decisions by immigration judges and a fairly brief affirmance by the BIA. As this court suggested in Talatinsky in 2011, when the BIA does not overturn a thoroughly analyzed decision of the immigration judge but simply affirms the decision, this court does not require the BIA to, quote-unquote, detail exhaustively its reasons for affirmance. But even then, the BIA has to at least, quote-unquote, eliminate the path of its reasoning. Judge Barron? I just have one quick question, which is on the CAT issue. Could you just address why the fact in the record of the arrest of the petitioner for his gang activity in El Salvador doesn't undermine the position you're taking about government involvement with respect to the CAT claim? I apologize, Your Honor. Was that a question for me? Yeah. I would respectfully suggest that Mr. Kim is in a better position to answer this question. Oh, I see. Yeah, I got it. Yeah, yeah, yeah, fair. Thank you, Mr. Romanofsky.  Thank you, Your Honor. May it please the court. Let me start with Judge Barron's question. So, government's argument is that the fact that he was arrested because he was a suspected gang member that cuts against the CAT claim, it is, in fact, the opposite. So, he's not a gang member. He was found credible by the IEJ, including all of his deniers as an active or even a gang member. Now, because he was accused as a suspected gang member, that goes in favor of the CAT eligibility. As I noted in my opening argument that there is objective country condition evidence where the security forces do not investigate, prosecute of the homicide cases if the victims are either marginalized community members and or suspected gang members. So, applying that objective evidence to this case as an individualized assessment of the likelihood of torture, even if he goes back to his country, even if some government actors do work against gangs, do arrest, do protect some victims, they will not protect him. So, that argument actually works in our favor, in petitioner's favor for a CAT eligibility. Now, it appears the government consists about the prejudice issue. This court invited the party to submit a full supplemental brief, which was 13,000 words, and government only spent 5,000 words. So, government cannot say that government was prejudiced because the CAT or the witness based PSG claim is raised in the supplemental brief, and government has ample opportunity to respond. What the government did was just include one footnote about the CAT issue only. Based on that, this court should exercise discretion to entertain both claims, and this court should reverse the BIA's finding on both claims and remand the case consistent with its decision. Thank you, Honor. Thank you. Thank you all. That concludes the argument in this case. Attorney Romanofsky, Attorney Kim, and Attorney Robbins, you should disconnect from the hearing at this time.